

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>      vs.<br><br>ROBERT SMITH,<br><br>                  Defendant. | No. 3:24-mj-00253-MMS |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, KATIE YARBOROUGH, being first duly sworn, hereby depose and state as follows:

**I.    BACKGROUND AND EXPERIENCE OF AFFIANT**

1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been a SA with the FBI for approximately five years. I am currently assigned to the White-Collar squad in the FBI Anchorage Field Office. During my time with the FBI, I have led and participated in investigations involving violent crimes, sexual misconduct, threats, robberies, health care fraud, fraud against the government, and drug trafficking. I also investigate violations of federal law occurring in the Special Aircraft Jurisdiction of the United States.

//

//



## II. PURPOSE OF AFFIDAVIT

2. I make this affidavit in support of an application for a criminal complaint and arrest warrant for **ROBERT BRANDON SMITH**. I submit that there is probable cause to believe that **SMITH** has violated 49 U.S.C. § 46504 (Interference with Flight Crew Members and Attendants), 49 U.S.C. § 46506(1) (Application of Certain Criminal Laws to Acts on Aircraft), and 18 U.S.C. § 113(a)(5) (Simple Assault within Maritime and Territorial Jurisdiction). I have not set forth in this affidavit all the facts and sources of information with which I am familiar that support my assertion of probable cause.

## III. RELEVANT STATUTES AND REGULATIONS

3. Title 49, United States Code, Section 46504 (Interference with Flight Crew Members and Attendants) provides in pertinent part:

   a. "An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both."

4. Title 49, United States Code, Section 46506(1) (Application of Certain Criminal Laws to Acts on Aircraft), provides:

   b. "An individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that – (1) if committed in the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18)

Page 3 of 9

would violate section 113, 114, 661, 662, 1111, 1112, 1113, or 2111 or chapter 109A of title 18, shall be fined under title 18, imprisoned under that section or chapter, or both[.]"

5. Title 18, United States Code, Section 113(a)(5) (Simple Assault within Maritime and Territorial Jurisdiction), provides:

   a. "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: (5) Simple assault, by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both."

IV. **PROBABLE CAUSE**

6. I am familiar with the information contained in this affidavit based upon the investigation I have conducted, in conjunction with other federal, state, and local law enforcement officials, which has included exchanging information with law enforcement officers and others; reviewing notes, reports, database records and other information acquired during this investigation; and reviewing evidence obtained therefrom; and interviewing witnesses.

7. Because I submit this affidavit for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me or the government. I have only included those facts necessary to establish probable cause to believe that **SMITH** has committed a violation of 49 U.S.C. §§ 46504 and 46506(1), and 18 U.S.C. § 113(a)(5)

Page 4 of 9

Case 3:24-mj-00253-MMS   Document 1-1   Filed 06/10/24   Page 3 of 8

8. On Thursday, June 6, 2024, at approximately 5:00 p.m., FBI airport liaison agents in the Anchorage field office received a phone call from Anchorage Airport Police Department (AAPD), who reported that a passenger aboard Alaska Airlines flight 189 caused an interference with the flight crew during the flight.

9. Alaska Airlines flight 189, registered aircraft number N288AK, departed from Seattle, Washington on June 6, 2024, and was scheduled to arrive in Anchorage at approximately 3:35 p.m. that same day. After the flight landed at the Ted Stevens Anchorage International Airport, AAPD officers conducted the interviews of the flight crew. After conducting those interviews, an AAPD officer and FBI agents then interviewed the suspect, **ROBERT BRANDON SMITH**.

10. During the interviews of the flight attendants, one attendant, L.J., stated it was during the first cart service when she first interacted with **SMITH** (who was sitting in seat 26E) that she noticed he was showing signs of intoxication. After cart service, she was collecting trash when she noticed **SMITH** had gotten up from his seat and was in the back galley with the other attendant, A.B. L.J. went to the back galley and overheard **SMITH** asking for beer from A.B., who told him he could not have any alcohol. L.J. then witnessed **SMITH** touching A.B.'s shoulder and making comments in which he was "hitting on her." L.J. stated she was uncomfortable with his actions and could tell A.B. was also showing signs of being uncomfortable. L.J. told **SMITH** to go back to his seat, which he reluctantly did so.

11. During the interview of A.B., she stated she thought **SMITH** was possibly intoxicated. **SMITH** came to the back galley where she was located and made comments



to her about wanting to marry her and how many kids they would have. **SMITH** kept touching her shoulder. She told him to stop, and he did. He asked her for beer multiple times, but she refused to give him any.

12. After **SMITH** went back to his seat, a passenger complained to the attendants that **SMITH** was listening to his phone without earbuds, and it was very loud. Another attendant, M.B., tried to give the airline's supplied earbuds to **SMITH** to use, but **SMITH** became agitated and started yelling at M.B.

13. During the flight crew's second beverage cart service, **SMITH** got more agitated and started yelling again. Some passengers tried to intervene on behalf of the attendants and told **SMITH** to calm down. This caused **SMITH** to become more agitated, and he began yelling even more and shouting profanities. A.B. stated that everyone around **SMITH** was uncomfortable and that his yelling even caused babies in the seats near him to start crying because he was so loud. A.B. retrieved the airline's flex cuffs and left them with a male passenger sitting behind **SMITH** in case they needed to use them on him. The flight attendants then proceeded to move the passengers sitting around **SMITH** to other seats away from him because they feared for their safety. A.B. arranged for a uniformed pilot (who was a passenger on the plane) to sit next to **SMITH** for the duration of the flight to watch over him. The attendants notified the captain of the plane, who proceeded to lock down their cabin door for safety concerns. A.B. stated that **SMITH** made a lot of passengers feel uncomfortable and described the whole incident as being "a frightening situation because it was so unpredictable."

14. During flight attendant L.J.'s interview, she stated that after the second

beverage cart service was done, she noticed a call light had been activated on row 27 and went to find out the reason. Passengers sitting in row 27 stated they did not feel safe around **SMITH** and wanted to be moved to another seat away from him. The passengers also told L.J. that **SMITH** had been drinking from mini alcohol shot bottles the whole flight, which they believed he snuck on the plane. L.J. stated that this was when they removed all the passengers around him and had the uniformed pilot sit next to him. L.J. stated that at one point, **SMITH** and the uniformed pilot sitting next to him started yelling at each other. The pilot told **SMITH** there were children and families around him, and he better calm down and stop yelling. **SMITH** yelled profanities back to include saying, "go to hell…rot in hell…." L.J. stated she felt scared this whole time and thought the pilot and **SMITH** were going to get into a physical altercation because of **SMITH**'s actions.

15. Once the plan landed and SMITH was removed, I interviewed him. After being read his Miranda Rights, **SMITH** agreed to answer questions. **SMITH** stated he could not get his earbuds to work and wanted to listen to his phone. He was "pissed" that another passenger "grabbed" his shoulder to tell him to turn down the volume on his phone. **SMITH** stated, "If we hadn't had been on that plane, I'd have fucked him up." **SMITH** stated after attendants told him to turn down the volume, he turned off his phone completely. **SMITH** stated he never talked to a single person the rest of the flight. **SMITH** thought he was "very nice and cordial" to the flight attendants and never "rude" to any staff on the aircraft during the flight.

16. When asked if he had any beverages on the flight, **SMITH** stated, "Of course. I had one from Reno to Seattle and one from Seattle to Anchorage. That's it. Two beers all

day." When asked if he had taken any other substances besides alcohol, **SMITH** denied taking any medications or drugs besides the two beers.

17. I then arrested **SMITH** and transported him to Anchorage Correctional Center. During the routine medical examination, **SMITH** was administered a Breath Alcohol Content test (BrAC) at approximately 6:12 p.m. The AAPD officer and FBI agent overheard the employee administering the test state that it reported **SMITH** had a BrAC of 0.116, above the legal limit. This was nearly three hours after the plane landed in Anchorage.

V. CONCLUSION

18. Based on the foregoing, I submit that there is probable cause to believe that **ROBERT BRANDON SMITH** assaulted or intimidated a flight crew member or flight attendant, interfered with the performance of the duties of the member or attendant or lessened the ability of the member or attendant to perform those duties, or attempted or conspired to do such an act, while onboard an aircraft in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. § 46504 (Interference with Flight Crew Members and Attendants); that he committed an act that if committed in the special maritime and territorial jurisdiction of the United States would violate section 113 of Title 18 while onboard an aircraft in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. § 46506(1) (Application of Certain Criminal Laws to Acts on Aircraft); and that he committed a simple assault within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(5) (Simple Assault within Maritime and Territorial Jurisdiction).

Respectfully submitted,

*Katie Yarborough*
KATIE YARBOROUGH
Special Agent, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed.R.Crim.P. 4.1 this 7th day of June 2024

_____
HON. MATTHEW M. SCOBLE
CHIEF U.S. MAGISTRATE JUDGE

Page 9 of 9

Case 3:24-mj-00253-MMS   Document 1-1   Filed 06/10/24   Page 8 of 8